*********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stephenson and the briefs and arguments of the parties. The appealing party has shown good grounds to reconsider the evidence. The Full Commission REVERSES the Opinion and Award of Deputy Commissioner Stephenson.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. An employer/employee relationship existed at the time of the alleged incident.
2. The North Carolina Highway Patrol was the duly qualified employer at the time of the incident. *Page 2 
3. The parties are subject to the North Carolina Workers' Compensation Act, Defendant-Employer employing the requisite number of employees to be bound under the provisions of said Act at the time of the incident.
4. Defendant-Employer was self-insured at the time of the incident.
5. Plaintiff's average weekly wage is $996.96, with a compensation rate of $664.64
6. The alleged date of injury is August 8, 2007.
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the alleged injury, Plaintiff was employed with the North Carolina Department of Crime Control and Public Safety as a State Trooper. Plaintiff was employed in that capacity in 2002.
2. Plaintiff has a history of depression going back to his teenage years. On January 24, 2005, Plaintiff sought treatment with Dr. Jeffrey R. Chambers for depressive and anxiety symptoms. Plaintiff described a feeling of alienation that went back to at least his teenage years. Breakups had been especially hard for Plaintiff in the past. Dr. Chambers diagnosed Plaintiff with a major depressive disorder. Dr. Chambers described major depression as "an illness in which there are negative emotions that a person can't bring themselves out of."
3. In 2005, Plaintiff described a pattern of falling back into a depressive state when there was any sort of stressor in his life. Generally the stressors in his life revolved around failed relationships with women and his family. During the early part of 2005, Plaintiff had a definite improvement. In late April 2005 Plaintiff suffered a setback due to a breakup. Another breakup *Page 3 
occurred in late summer of 2005 that caused another setback from which Plaintiff eventually improved. None of the stressors in 2005 were work related.
4. Plaintiff continued to see Dr. Chambers in 2006. Dr. Chambers never changed Plaintiff's diagnosis code from major depressive disorder. Early in 2006, Plaintiff felt as if his medications were not working. He had increased irritability, crankiness, and some weight and appetite loss. He had more unhappiness, lack of energy, and continued relationship problems. Plaintiff improved over the course of two months in spite of losing his Grandmother. He lost weight, felt better, and entered into a relationship with a new girlfriend. A medication change also contributed to his improvement.
5. In August 2006, Plaintiff presented to Dr. Chambers complaining of stress. He was angry and most of his focus was again on his relationships. Relationships were about 60% of his misery.
6. In December 2006, Plaintiff began to complain that work was not satisfying. He was not getting as much out of work as he did before, but he could not attribute his dissatisfaction to anything specific.
7. When asked what the cause of Plaintiff's stress and anxiety might be, Dr. Chambers answered that the mood disturbances were mainly developmental issues resurfacing in the present and provoked mainly by a relationship. It was a familiar pattern to Dr. Chambers. He stated that a number of mental health professionals probably would diagnose Plaintiff with a personality disorder.
8. According to Dr. Chambers, Plaintiff was predisposed to having major depressive disorders. He went on to state that it is acceptable to presume a genetic predisposition for depressive episodes in most people who get them. In regard to Plaintiff specifically, Dr. *Page 4 
Chambers said that it would be safe to say that somehow through Plaintiff's experiences with his family, his school, and his friends he did not develop a stable and positive view of himself. Overall, Plaintiff's symptoms from 2005 to 2006 were established at a baseline with oscillations.
9. In 2007 Plaintiff was experiencing relationship problems, and Dr. Chambers made some medication changes following the holiday season. In February, Plaintiff moved in with his girlfriend but continued to experience irritability such that he wanted to move out again.
10. In March of 2007, Plaintiff was accused of using excessive force and making inappropriate comments to women in his position as a State Trooper. Shortly thereafter, Plaintiff was also accused of profiling women while he was looking for drivers who were impaired. The subsequent investigation of these accusations took several months.
11. Television and internet media reported details of the investigation of Plaintiff. Due to Defendant-Employer's policy that its officers may not comment on ongoing investigations, Plaintiff was not allowed to comment to the media about the investigation which made Plaintiff feel helpless. The purpose of this policy is to prevent prejudice to the internal investigation.
12. Plaintiff was eventually cleared of the allegations. During the investigation, Defendant-Employer treated Plaintiff the same as any other highway patrol trooper who was the subject of an internal investigation.
13. On April 16, 2007, Plaintiff was scheduled to appear in two different courtrooms at the Wake County Courthouse. When he was late for his appearance in District Court, the judge held Plaintiff in two counts of criminal contempt of court. The first count was for lying to the judge as to his whereabouts. The second count was for holding up the court's proceedings. The Judge served Plaintiff with a contempt order on May 3, 2007. *Page 5 
14. On May 2, 2007 Plaintiff was placed on administrative duty and began working in an administrative capacity in the office on May 3, 2007.
15. On May 8, 2007 Plaintiff presented to Dr. Chambers complaining of having been placed on administrative leave. Plaintiff told Dr. Chambers that he had a hearing coming on June 1, 2007. The problems were such that Plaintiff could hardly drag himself from bed.
16. In June, 2007, Plaintiff pled guilty to disrupting the normal flow of business in a court, a Class B misdemeanor. A Class B misdemeanor conviction suspends a sworn officer's certification from the North Carolina Criminal Education and Standards Commission (Training and Standards).
17. On July 2, 2007, Plaintiff sustained an injury to his neck when he was bending over a filing cabinet to get some files. He presented to Dr. Thomas Griggs on July 5, 2007. Dr. Griggs diagnosed him with a pain syndrome with paresthesias. Dr. Griggs prescribed Percocet for the Plaintiff and referred him to Dr. Timothy Garner. Dr. Griggs recommended that the Plaintiff remain out of work. An MRI of Plaintiff's cervical spine revealed mild disc osteophyte complexes at C4-C5, C5-C6 and C6-C7 without associated central canal stenosis or neural foraminal narrowing. In a letter dated July 26, 2007, Dr. Griggs indicated that Plaintiff's condition would not require any surgery and recommended that he continue to treat the symptoms until they resolved. Dr. Griggs had previously treated Plaintiff for a similar condition in his lower back.
18. When Dr. Chambers saw Plaintiff on July 3, 2007, Plaintiff was stressed about his career and had just broken up with his girlfriend in the last ten days.
19. While Plaintiff was written out of work by Dr. Griggs, the Wake County District Attorney subpoenaed Plaintiff to court to testify in a case. He attended court on July 30, 2007. *Page 6 
First Sergeant Cameron Taylor testified that Plaintiff was also subpoenaed to court for the week of August 6, 2007.
20. Sergeant Taylor, Plaintiff's supervisor, indicated that although an officer is on sick leave, he is still expected to honor his court duties because he is under subpoena. Despite Taylor's representations to the District Attorney's office that Plaintiff was out on sick leave, Plaintiff's cases were not continued and he was not excused from the duties imposed upon him by the subpoenas.
21. On August 8, 2007, Plaintiff appeared at the Wake County Courthouse pursuant to a subpoena he received from the Wake County District Attorney. Plaintiff was under considerable media scrutiny as a result of the internal investigation relating to the alleged excessive force and his profiling of women.
22. During Plaintiff's testimony on August 8, 2007, Plaintiff was taking his prescribed narcotic pain medication and medication for depression. Plaintiff's testimony was deemed not credible by the Court. The cases that were heard in court on August 8, 2007 in which Plaintiff made the arrests were dismissed. These cases numbered in the hundreds.
23. Upon leaving the courtroom on August 8, 2007, Plaintiff was barraged by media reporters which continued as he left the courthouse. Plaintiff went immediately to his attorney's office downtown. Reporters followed him from the courthouse to his attorney's office where Plaintiff suffered an anxiety/panic attack. This incident pushed Plaintiff over the edge and exacerbated his preexisting depression and anxiety.
24. Plaintiff was taken to Wake Medical Center's Emergency Room with numbness all over and his heart racing. A psychiatric evaluation was recommended and shortly thereafter, Plaintiff was admitted to Holly Hill Hospital for approximately one week. *Page 7 
25. Dr. Chambers stated that Plaintiff would be predisposed to having the sort of extreme reaction that he experienced on August 8, 2007 as a result of his personality disorder and his major depressive symptoms. Plaintiff's extreme reaction is unique to him as a result of his underlying personality disorder and his major depressive disorder.
26. Following Plaintiff's hospitalization, he continued treatment with Dr. Zarzar and Alice Colbert, a licensed clinical social worker in Dr. Zarzar's practice. Plaintiff's progress during his treatment was limited with some improvement of symptoms, then a consistent recurrence of symptoms typically related to a loss that he has experienced.
27. Despite being cleared in the internal investigation involving the excessive use of force and his profiling of women, Plaintiff was terminated on August 31, 2007 for his failure to conform to the law and his violation of the standard of being truthful. Plaintiff currently has an action pending to be reinstated as a State Trooper.
28. All sworn law enforcement officers in the State of North Carolina must have certification from Training and Standards in order to perform their jobs. Without certification from Training and Standards, an individual is prohibited from serving in a sworn law enforcement position. The North Carolina Criminal Education and Standards Commission (Training and Standards) revoked Plaintiff's certification as a sworn law enforcement officer. This same de-certification also prevented him from obtaining a law enforcement job in Florida in 2008. The North Carolina Department of Crime Control Public Safety is an independent agency from the North Carolina Criminal Education and Standards Commission (Training and Standards).
29. Plaintiff believes that he is capable of working as a State Trooper but for the certification issue with Training and Standards and that his stress and anxiety are not disabling. *Page 8 
30. The Full Commission finds based upon the greater weight of the evidence that Plaintiff suffered an injury by accident on August 8, 2007 as a result of his employment with Defendant-Employer when he was barraged by the media upon leaving the courtroom and was admitted to Holly Hill Hospital.
31. The greater weight of the evidence shows that Plaintiff was not capable of working as a result of the August 8, 2007 incident from August 8, 2007 until August 31, 2007 when Plaintiff was terminated for failing to conform to the law and for violating the standard of being truthful.
 ***********
Based on the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The greater weight of the evidence shows that Plaintiff's depression and anxiety problems were not due to causes and conditions characteristic of and peculiar to his employment with Defendant-employer and Plaintiff's employment with Defendant-employer does not place him at an increased risk for contracting depression as opposed to the members of the general public. Therefore, Plaintiff has failed to prove that he suffers from an occupational disease. N.C. Gen. Stat. § 97-53(13).
2. Plaintiff suffered a compensable injury by accident as a result of his employment with Defendant-Employer on August 8, 2007. N.C. Gen. Stat. § 97-2(6).
3. In order to meet the burden of proving continuing disability, Plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment *Page 9 
and that the incapacity to earn pre-injury wages was caused by Plaintiff's injury. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982).
4. On August 31, 2007, Plaintiff was terminated for misconduct and fault, unrelated to his compensable injury, for which a non-disabled employee would ordinarily have been terminated by Defendant-employer. Seagraves v. Austin Co. of Greensboro,123 N.C. App. 228, 472 S.E. 2d 397 (1996). Accordingly, plaintiff's termination constituted a constructive refusal of suitable employment. N.C. Gen. Stat. § 97-32; Id.
5. Under the Seagraves analysis, after an employer has proven that the employee's termination constitutes a constructive refusal of employment, an employee must then show that his inability to find other employment at wages comparable to those earned prior to the injury is due to the work-related disability. Seagraves v. AustinCo. of Greensboro, supra.
6. In the present case, plaintiff did not meet his burden to prove that after his termination on August 31, 2007, he was incapable of finding work because of his work-related injury. Demery v. PerdueFarms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001);Russell v. Lowes Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993). Therefore, after August 31, 2007, plaintiff failed to prove that he was disabled from employment due to the compensable injury and he is not entitled to any compensation after August 31, 2007. N.C. Gen. Stat. § 97-29; Seagraves v. Austin Co. of Greensboro,supra.
7. Plaintiff is entitled to temporary total disability benefits from August 8, 2007 through August 31, 2007 at the rate of $664.64 per week. N.C. Gen. Stat. § 97-29.
8. Plaintiff is entitled to have Defendants pay for medical expenses incurred as a result of the compensable injury as were required to provide relief, effect a cure, or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25. *Page 10 
 ***********
Based on the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission makes the following award:
 AWARD
1. Defendants shall pay to Plaintiff temporary total disability benefits from August 8, 2007 through August 31, 2007 at the rate of $664.64 per week.
2. Defendants shall pay to Plaintiff's legal counsel 25% of the total amount of temporary total disability owed to Paintiff.
3. Defendants shall pay for Plaintiff's medical expenses incurred as a result of the compensable injury as were required to provide relief, effect a cure, or lessen the period of disability.
4. Defendants shall pay the costs.
This the 25th day of March 2010.
 S/_____________ STACI T. MEYER COMMISSIONER
CONCURRING:
 S/_____________ DANNY LEE McDONALD COMMISSIONER
 S/_____________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 1